**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOUIS MONAE, on behalf of himself and all others similarly situated, | ) Case No. 18-cv-424 |
| Plaintiff, | ) Judge Sharon J. Coleman |
| | ) Mag. J. Sidney I. Schenkier |
| v. | ) |
| COOK COUNTY SHERIFF'S OFFICE, COOK COUNTY SHERIFF'S MERIT BOARD, and COUNTY OF COOK, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO "BIFURCATE" CLASS DISCOVERY PURSUANT TO FED. R. CIV. P. 23 AND TO BE EXCUSED FROM PARTICIPATION IN THE MANDATORY INITIAL DISCOVERY PILOT PROGRAM**

Plaintiff, Louis Monae, by and through counsel, on behalf of himself and all others similarly situated, submits this opposition to the motion filed by the Cook County Sheriff's Office ("CCSO") and Cook County (collectively, "Defendants") to "bifurcate class discovery" and to be excused from participation in the Court's Mandatory Initial Discovery Pilot Program ("MIDP"). The Court should deny Defendants' motion, for the reasons set forth below.

**I. The Defendants' Motion Presents No Persuasive Basis Either to Excuse Compliance with the MIDP or to "Bifurcate"** *(by which they mean "prevent")* **Discovery.**

The Court entered an order allowing the Defendants to file a motion to excuse participation in the MIDP. ECF Doc. 48. Instead, the motion they have filed is far broader, seeking both to excuse compliance with the MIDP and to "bifurcate"

discovery—by which they mean to prevent all discovery, in a Title VII hiring case, of comparators' job application files. This is unprecedented.

There are two overlapping proposed class actions before this court, *Monae v. Cook County Sheriff's Office*, and the related case *Simpson v. Cook County Sheriff's Office*, Case No. 18-cv-553 (N.D. Ill. Coleman, J.). They should be considered together, since both allege that for a period of years the Defendants discriminated against African Americans when hiring correctional officers. The plaintiffs in each action, *Monae* and *Simpson*, allege both disparate treatment and disparate impact hiring discrimination. *See id.*

Defendants' motion to be excused from the MIDP and to "bifurcate" discovery—which they explain is really a motion to prevent discovery of comparators' job application files—would deprive plaintiff of *among the most important* evidence in this or any other Title VII case: the documents showing what happened to comparators. In this case, these are among the essential "documents [and] electronically stored information ("ESI") … known by each party to exist that … may be relevant to any party's claims or defenses." Standing Order Regarding Mandatory Initial Discovery Pilot Project § B(3). Defendants conspicuously do not explain—because they cannot—how a disparate impact claim—requiring evidence of the number of white applicants who applied, were offered jobs, or were rejected, compared to the number of black applicants who applied, were offered jobs, or were rejected, and the reasons why—could possibly be adjudicated without production of the files that show how many applicants of each race applied, were offered jobs, or

2

were rejected and why. This is true both for class and non-class cases. See, *e.g.*, *Ernst v. City of Chicago*, 837 F.3d 788 (7th Cir. 2016) (disparate impact, non-class case, on behalf of five individual plaintiffs).

Defendants' motion does not explain how *Monae* and *Simpson* could proceed, whether on a class or individual basis, without production of the applicant files. The Court cannot adjudicate whether the Defendants' hiring procedures have an adverse impact on African Americans, whether Defendants can justify those procedures as consistent with business necessity, and whether there are less discriminatory alternatives available without evidence from the files. Thus, for *Monae* and *Simpson* to be adjudicated, the files must be produced.

## II. Defendants' Motion is Conclusory and Unsubstantiated

Defendants' motion is based upon conclusory and unsubstantiated assertions, offered without foundation and without personal knowledge, about the number and content of correctional officer applicant files and the alleged corresponding burdens of production.

First, Defendants seek an unspecified delay in production of "weeks to months" based upon the assertion that the Merit Board certified 2,600 applicants from 2014-2018. ECF No. 50 at 4. But the only evidence submitted is a declaration of the CCSO's general counsel, Nicholas Scouffas, (ECF No. 50-1), who does not even claim to have personal knowledge of the *relevant files*. The key assertion in his declaration—that "from 2014-2018 approximately 2,600 certified applicant files came to the Sheriff's Office for review and possible hiring"—is offered *"[b]ased*

3

*[solely] upon information and belief.*" *Id.* ¶4. Moreover, his "information and belief" is about the number of "certified applicant files … that came to the Sheriff's Office." Mr. Scouffas does not state how many of those applicant files *were for the correctional officer position*, which is the only position at issue in this case. Applicant files that "come to the Sheriff's Office" also include applications for deputy sheriff positions, which are irrelevant here. *See* https://www.cookcountysheriff.org/wp-content/uploads/2018/02/Cook-County-Sheriffs-Merit-Board-Rules-Regulations-2.2.18.pdf at 4 (Merit Board may conduct tests and use "any other examination or process [it] deems necessary to establish a Certified Roster of Applicants for the positions of Correctional Officer and Deputy Sheriff.") Thus, Defendants have failed to identify even the number of relevant files.

Second, Defendants' argument for "bifurcation," by which they mean to avoid production of the applicant files until after a disposition of the *merits*, asserts entirely without foundation that there could be "over 20,000 additional applicants." That bald statement appears only in the motion. Defendants have submitted no evidence whatsoever of that "20,000" figure. Mr. Scouffas, as general counsel of the CCSO, does not claim to have any information, even on information and belief, about the number of applicants to the Merit Board.

**III. Given the Nature of the Claims Asserted, the Fact that the Case is a Putative Class Action Does Not Warrant Its Removal From the MIDP. Applicant Files Would Be Necessary in an Individual Disparate Impact Case.**

Although class actions can be treated as exceptions to the MIDP, here, it makes no sense to remove either *Monae* or *Simpson* from the MIDP merely because

4

they are putative class actions. The applicant files would be relevant and necessary to the adjudication of both *Monae* and *Simpson* even if the named plaintiffs had filed suit only as individuals. As described above, the Court cannot adjudicate disparate impact discrimination claims without evidence of the composition of the applicant pool and the adverse impact of the hiring procedures.

### IV. The Evidence Submitted Supports, at Most, 30 Additional Days for Defendants to Comply with the MIDP

Defendants have failed to explain why they should be allowed additional "weeks to months" to gather and produce the correctional officer applicant files when it has been obvious since the filing of *Monae* and *Simpson*—three months ago—that the information would need to be produced. At the motion hearing on April 17, 2018, the Court admonished Defendants that they should have reviewed the files *before answering the complaint*. Defendants could be given a 30-day extension of time for compliance. Plaintiff is of course willing to work with the CCSO, once the CCSO has accurate information about the volume of relevant files, to minimize the burden for all parties.

Dated: April 19, 2018             Respectfully submitted,


                                  /s/ Marni Willenson
                                  One of the attorneys for Plaintiffs


Marni Willenson
marni@willensonlaw.com
Samantha Kronk
skronk@willensonlaw.com
WILLENSON LAW, LLC
542 S. Dearborn St., Ste. 610
Chicago, IL 60605

5

(312) 508-5380
(312) 508-5382 Fax

6